# Richmond.

## LURTY'S CURATOR v. LURTY.

### November 21, 1907.

### Absent, Keith, P., and Cardwell, J.

1. LIMITATION OF ACTIONS—*New Promise—Acknowledgment—Evidence—Burden of Proof—Survivor of a Transaction.*—Where a husband sells personal property owned by himself and wife jointly, and takes the note of R., the purchaser, therefor, payable to himself, and then renders her a statement in writing over his signature, showing that her share of the sale amounted to a sum stated, "which is due you out of R.'s note when collected," this establishes the fact that the husband was the wife's agent in the transaction, and the language used is an acknowledgment that he will be due his wife the sum stated when the note is paid, from which the law implies a promise to pay. The burden is on the wife to show the subsequent payment of the note and the date of payment, and this may be shown by the maker of the note, notwithstanding the death of the husband, in an action by her against the curator of her husband's estate. The limitation on such acknowledgment is five years, as it is "a contract by writing, signed by the party to be charged thereby."

2. LIMITATION OF ACTIONS—*Acknowledgment Under Seal.*—The three-year limitation is inapplicable to a debt evidenced by writing under the signature and seal of the debtor. If the antecedent debt were a mere assumpsit, it is merged in the specialty.

3. EVIDENCE—*Effect of Acceptance of a Check "In Full Of All Demands."*—The acceptance of a check containing the words "in full of all demands," raises a *prima facie* presumption that it is in full payment and discharge of all previously existing liabilities, and the burden of overcoming this presumption by direct or circumstantial evidence rests upon the payee.

4. WITNESSES—*Husband and Wife—Privileged Communications—Matters of Business.*—Under the statute of this state, neither husband nor

Opinion.

wife can, without the consent of the other, testify (either during the coverture or afterwards) as to any communication made by one to the other while married, but this rule of privilege does not apply to communications between husband and wife with regard to a business matter in which he is acting as her agent.

Error to a judgment of the Circuit Court of Rockingham county in a proceeding by motion for a judgment. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*H. W. Bertram* and *D. O. Dechert,* for the plaintiff in error.

*Conrad & Conrad,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The judgment under review was recovered on motion by the defendant in error, Annie S. Lurty, against the curator of the estate of her deceased husband, Warren S. Lurty.

Five hundred and five dollars and eighty-nine cents of the recovery is the plaintiff's share of the price of cattle, the joint property of the husband and wife, sold by the former to Rodeffer, who made his note to the husband for the amount of the sale. This note was afterwards collected by the husband, who, before collection, rendered an account in writing to the plaintiff, over his signature, showing that her share of the sale amounted to $505.89, "which is due you out of Rodeffer note bearing 6 per cent. interest from October 18, 1901, at 120 days, bal. of the note, when collected, is W. S. Lurty's."

We are of opinion that this transaction establishes the relation of principal and agent between the plaintiff and her husband, with respect to the sale of the cattle, and the language employed by him was an acknowledgment that, when the note

was collected, he would be due his principal the sum indicated, from which the law implies a promise to pay.

The case is not distinguishable in principle from the class of which *Cunningham* v. *Herndon,* 2 Call 530, *Murdock* v. *Herndon,* 4 H. & M. 200, *Newby* v. *Forsyth,* 3 Gratt. 308, and *Davis* v. *Mead,* 13 Gratt. 118, are types.

The facts in *Davis* v. *Mead, supra,* are as follows: "A paper contains a statement of account of rents collected through a number of years by an agent for his principal, and, at the foot of the account there is a written statement, setting out the gross amount of the rents received, certain deductions for commissions and expenses, leaving the net sum of one thousand, one hundred and thirty-seven dollars, and thirty-five cents, and it concludes: 'In the foregoing statement all errors to be corrected. As witness my hand and seal.' And it is signed and sealed by the agent." In that case, Judge Lee observes: "To constitute a good and valid obligation, the law does not require any particular set form of words to be employed. Any words which sufficiently declare the intention of the party and denote his being bound, or which expressly or impliedly acknowledge a debt as due from him to another, will constitute a good bond. * * * It was, therefore, an acknowledgment, under his seal, that so much was still due * * * to pay which a promise is raised by implication of law."

It is clear, under the authorities, that the paper in question constitutes "a contract by writing, signed by the party to be charged thereby," the limitation on which is fixed at five years by Virginia Code, 1904, section 2920. The plea setting up the three-years' limitation was, therefore, properly overruled.

*A fortiori,* the three-years' limitation, was inapplicable to the item of $102, evidenced by writing under seal, which constituted another part of the judgment. We fail to appreciate the force of the argument that the antecedent indebtedness, upon which the writings in question are founded, were mere assumpsits, which ought to regulate the period of limitation. The

contention loses sight of the doctrine of merger, whereby, by operation of law, an inferior liability is absorbed by one of higher legal degree.

The exception to the admission of the testimony of Rodeffer and the instruction given by the trial court as to the effect of the check drawn by the husband payable to the wife, purporting to be "in full of all demands," are both without merit. Rodeffer's evidence was admissible to show that he had paid the note, and to fix the date of payment. The implied promise of Lurty to pay was conditioned upon his collecting the note, and the burden of proof rested upon the plaintiff to establish that fact.

The instruction complained of tells the jury that if they believe from the evidence that the plaintiff * * * accepted and collected the check * * * bearing upon its face the statement that the same was ' in full of all demands,' such acceptance and collection * * * raises a *prima facie* presumption that the same was in full payment and discharge of all previously existing liabilities, * * * and the burden of overcoming such presumption by direct or circumstantial evidence * * * rests upon the plaintiff, and unless such presumption is overcome by a preponderance of the evidence, they must find for the defendant." This instruction propounds a familiar and correct proposition of law, and was relevant to the issues and evidence in the case.

The remaining assignment of error demanding notice arises in connection with the court's action in excluding certain letters written by the wife to the husband, which, it is alleged, have material bearing upon the matters in controversy.

Admittedly, the exclusion of these letters would be proper according to the common law doctrine, but it is said their admissibility follows as a necessary consequence to the statutory right of husband and wife to contract with and implead one another. But this argument is more plausible than sound. It would have been equally applicable to the common law rule of

exclusion of witnesses in civil cases, on the ground of interest or of being parties—a rule which obtained in this state until abolished by statute.

Professor Minor, in discussing the well-settled rule of the common law, rendering husband and wife incompetent, observes: that it is "a rule of exclusion founded partly on the identity of their legal rights and interests, and partly on principles of public policy, which lie at the basis of civil society; for it is essential to the happiness of social life that the confidence which ought to exist between husband and wife should be sacredly cherished in its most unlimited extent, not only during the continuance of the coverture, but as to facts learned from the consort even after its termination also." 4 Min. Inst. (Pt. I,) 690.

In the revision of 1887, the revisors strongly recommended the entire repeal of the common law rule in all civil cases, and a modification of it in criminal cases, but the code committee opposed the innovation and struck out the suggested changes. After the code had been adopted, a bill embodying the views of the revisors was again introduced, but met with the same fate. Subsequently, two of the revisors, Judges Burks and Riely, pressed the matter with great force in addresses delivered before the Virginia State Bar Association, but without avail. See note by the editor, Judge Burks, to *Pillow* v. *S. W. Va. Imp. Co.,* 1 Va. L. Reg. 673; also 3 Va. L. Reg. 410.

The statute law on this subject is found in Va. Code, 1904, sec. 3346a. Though the common law rule has been greatly enlarged, sub-section (3) distinctly prohibits husband or wife, without the consent of the other, being "examined in any case as to any communication made by the one to the other while married, nor shall either of them be permitted, without such consent, to reveal in testimony after the marriage relation ceases, any such communication made while the marriage subsisted; provided, that this exclusion shall not apply to a criminal proceeding for a criminal offense committed by one against

the other, but as to such proceeding the existing rules of evidence shall remain unchanged."

We are disposed to think that the excluded letters fall within the intendment of the statute; but, however that may be, the common law inhibition must remain intact until removed by legislative and not judicial repeal.

The contention that the letters are admissible by authority of *Bailey* v. *Bailey,* 21 Gratt. 43, *Carr* v. *Carr,* 22 Gratt. 168, and *Latham* v. *Latham,* 30 Gratt. 325, finds ready answer in the fact that these were suits for divorce, of which class of cases Professor Minor remarks: "Neither the common law ruling nor the statutory enactment (Virginia Code, 1904, sec. 2260) excludes proof of the admissions and statements of the parties. Their only effect is to prohibit a sentence from being founded *wholly* upon such admissions." 1 Min. Inst. (3rd ed.) 297.

These letters were written with becoming moderation, dignity and delicacy by a deeply wronged wife to an erring husband, touching the unhappy cause of estrangement between them. They are, therefore, clearly within the privileged class, and ought not, in our opinion, to be subjected to public scrutiny.

The point is not well taken, that this ruling would likewise exclude the communication from the husband to the wife with relation to the cattle transaction. If, in any proper sense, such statement of liability could be regarded as privileged, it comes within the exception "that the rule of privilege does not apply to communications between husband and wife with regard to a business matter, in which he is acting as her agent." *Schmied* v. *Frank,* 86 Ind. 250; *State* v. *Burlingame,* 146 Mo. 207, 48 S. W. 72; *Com'th* v. *Sapp,* 29 Am. St. Rep. 420, note.

There is ample evidence in the record to sustain the verdict of the jury; and, upon the whole case, we are of opinion that the judgment ought to be affirmed.

*Affirmed.*